In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3231

George Watts & Son, Inc.,

Plaintiff-Appellant,

v.

Tiffany and Company,

Defendant-Appellee.


Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 99-C-1217--Thomas J. Curran, Judge.


Argued January 12, 2001--Decided April 16, 2001




   Before Easterbrook, Diane P. Wood, and Williams, Circuit
Judges.

   Easterbrook, Circuit Judge.  For many years George
Watts & Son sold Tiffany's products in Wisconsin.
After receiving a notice ending that arrangement,
Watts filed suit, asserting that Tiffany had
violated both the contract between the parties
and the Wisconsin Fair Dealership Law, Wis. Stat.
ch. 135. Before the case could be decided, Watts
and Tiffany decided that they preferred
arbitration to litigation. The parties received
the principal benefit of that bargain: swift and
inexpensive decision. But Watts decided in
retrospect that its decision to arbitrate had
been unwise, and it asked the district court to
provide more relief than the arbitrator had
afforded.

   The arbitrator's award extended the time during
which Watts could resell Tiffany's merchandise
through Watts' bridal registry but permitted
Tiffany to cease selling to Watts at the end of
2000; it also required Tiffany to repurchase at
retail price all other Tiffany merchandise
remaining in Watts' inventory. The arbitrator did
not order Tiffany to pay Watts' attorneys' fees
and costs. In this respect, according to Watts,
the arbitrator departed from state law, requiring
the court to repair the problem. An error of law
is not a ground listed in 9 U.S.C. sec.sec. 10
and 11 for vacating or modifying an award, but in

dictum the Supreme Court has suggested that an arbitrator's "manifest disregard" of legal rules justifies judicial intervention. Wilko v. Swan, 346 U.S. 427, 436-37 (1953), overruled on other grounds by Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477 (1989). Often "manifest disregard of the law" would be covered by sec.10(a)(4), which authorizes vacatur "Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." If the parties specify that their dispute is to be resolved under Wisconsin law, then an arbitrator's declaration that he prefers New York law, or no law at all, would violate the terms on which the dispute was given to him for resolution, and thus justify relief under sec.10(a)(4). But Watts does not contend that the arbitrator violated the arbitration agreement in such a fashion. This poses for us the question whether there is a broader, extra-statutory principle authorizing courts to review arbitrators' legal rulings, or the legal assumptions that influence their decisions even if not identified as conclusions of law.

What could it mean to say that an arbitrator manifestly disregarded the law? That the arbitrator made a legal error? This is Watts' view--that Wisconsin law entitles the prevailing party to attorneys' fees in every case under the WFDL, that it "prevailed" in the arbitration by obtaining an extension of its dealership plus exceptionally favorable terms for the repurchase of inventory, and that the law therefore required the arbitrator to award legal fees too. If "manifest disregard" means only a legal error, however, then arbitration cannot be final. Every arbitration could be followed by a suit, seeking review of legal errors, serving the same function as an appeal within a unitary judicial system. That would prevent the parties from achieving the principal objectives of arbitration: swift, inexpensive, and conclusive resolution of disputes. If "manifest disregard" means not just any legal error but rather a "clear" error (one about which there is, in Watts' language, "no reasonable debate"), again arbitration could not be final, and the post-arbitration litigation would be even more complex than a search for simple error--for how blatant a legal mistake must be to count as "clear" or "manifest" error lacks any straightforward answer. Cf. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 399-405 (1990). In this case, for example, the parties dispute whether an award of fees under the WFDL is mandatory or only permissive (perhaps with a presumption in favor of an award); they dispute even whether the arbitrator's award was based on

the WFDL as opposed to the contract. Running these matters to ground could be complex. Fortunately, we need not do so (and we therefore express no opinion on them).

A search for either simple or clear legal error cannot be proper. Courts often say, with respect to arbitrators' role in interpreting contracts, that error is not a ground of judicial review. "[T]he question for decision by a federal court asked to set aside an arbitration award . . . is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract." Hill v. Norfolk & Western Ry., 814 F.2d 1192, 1194-95 (7th Cir. 1987); see, e.g., United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599 (1960). Yet in litigation the meaning of a contract is treated as an issue of law, when the text is clear and extrinsic evidence is either unavailable or precluded by the parol evidence rule. If manifest legal errors justified upsetting an arbitrator's decision, then the relation between judges and arbitrators established by the Steelworkers' Trilogy and reiterated by many later opinions would break down.

Our cases trying to apply the Wilko dictum demonstrate some of the difficulties. At least two decisions say that an award may be vacated when an arbitrator "disregards" the law in the sense of treating it as an obstacle to reaching a result preferred on other grounds. See National Wrecking Co. v. Teamsters, 990 F.2d 957 (7th Cir. 1993); Health Services Management Corp. v. Hughes, 975 F.2d 1253 (7th Cir. 1992). But other panels of this court have held the opposite, that arbitrators need not cite or apply rules of law outside the parties' agreement. Baravati v. Josephthal, Lyon & Ross, 28 F.3d 704 (1994); Flender Corp. v. Techna-Quip Co., 953 F.2d 273 (7th Cir. 1992); Chameleon Dental Products, Inc. v. Jackson, 925 F.2d 223 (7th Cir. 1991). These conflicting lines of precedent do not cite each other, except for Baravati, which concluded that the statutory list of reasons for setting aside an award is exclusive, that Wilko has after all been overruled, and that as a result "manifest disregard" of the law is not an independent reason to set aside an award. 28 F.3d at 706. But the next year First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942 (1995), repeated the Wilko dictum, and in 1999 another panel of this court stated in dictum (without citing Baravati) that the statutory list is not exclusive and that "manifest disregard of the law" is one non-

statutory ground for setting aside an award.
Koveleskie v. SBC Capital Markets, Inc., 167 F.3d
361, 366 (7th Cir. 1999). The law in other
circuits is similarly confused, doubtless because
the Supreme Court has been opaque. The dictum in
Wilko and First Options was unexplained and
unilluminated by any concrete application. Dictum
in Gilmer v. Interstate/Johnson Lane Corp., 500
U.S. 20, 32 n.4 (1991), is similarly unhelpful.

   There is, however, a way to understand
"manifest disregard of the law" that preserves
the established relation between court and
arbitrator and resolves the tension in the
competing lines of cases. It is this: an
arbitrator may not direct the parties to violate
the law. In the main, an arbitrator acts as the
parties' agent and as their delegate may do
anything the parties may do directly. See Eastern
Associated Coal Corp. v. United Mine Workers, 121
S. Ct. 462, 467 (2000) ("we must treat the
arbitrator's award as if it represented an
agreement between" the parties themselves).
Eastern Associated Coal may at last clear up the
confusion, having dealt with a related line of
cases in which courts wrestled with the question
whether violation of "public policy" (a form of
disregard of legal constraints) justifies setting
aside an award. The Court concluded that the
judiciary may step in when the arbitrator has
commanded the parties to violate legal norms
(principally, but not exclusively, those in
positive law) but that judges may not deprive
arbitrators of authority to reach compromise
outcomes that legal norms leave within the
discretion of the parties to the arbitration
agreement.

   Suppose Watts and Tiffany had sat down to
resolve their differences and had agreed on an
extension through the end of 2000, a repurchase
of remaining items at retail price, and each side
bearing its own fees and costs. Could there be
any legal objection? Surely not; it is a kind of
settlement businesses reach all the time, each
receiving part of what it wanted. Cf. Evans v.
Jeff D., 475 U.S. 717 (1986) (parties may reach
a settlement foregoing attorneys' fees under 42
U.S.C. sec.1988). If Watts and Tiffany may
resolve their differences without fees changing
hands, why can't an arbitrator, as their agent,
prescribe the same outcome? In Eastern Associated
Coal an employer contended that an arbitrator
exceeded his powers by ordering the reinstatement
of a truck driver who had twice tested positive
for marijuana. The Supreme Court held that
reinstatement was within the arbitrator's power,
because it was within the employer's power, and
the arbitrator exercised authority delegated by
the employer. If a federal statute, a federal

rule, or some equivalently definite federal policy prohibited employment of a drug-using truck driver, then the employer and arbitrator alike would be bound to respect it; the arbitrator could not order the employer to depart from the federal decision. Similarly an arbitrator may not require a firm to put in the cab someone whose driver's license has been revoked for driving under the influence of drugs. But because neither a statute nor a federal agency with authority over transportation has banned repeat drug users from the road, the Court held, the arbitrator's award could not be condemned as an excess of power. Cf. Paperworkers v. Misco, Inc., 484 U.S. 29 (1987).

After Eastern Associated Coal the "manifest disregard" principle is limited to two possibilities: an arbitral order requiring the parties to violate the law (as by employing unlicensed truck drivers), and an arbitral order that does not adhere to the legal principles specified by contract, and hence unenforceable under sec.10(a)(4). Neither of these approaches helps Watts.

No rule of Wisconsin law prevents parties to a dealership agreement from agreeing to bear their own legal expenses when resolving their differences. The arbitrator's award thus did not require either Tiffany or Watts to violate state law, even if the WFDL has the meaning Watts sees in it. Our case is fundamentally the same as Eastern Associated Coal: what the parties may do, the arbitrator as their mutual agent may do. People who want their arbitrators to have fewer powers need only provide this by contract. Watts and Tiffany could have agreed to arbitrate under provisions forbidding the arbitrator to split the difference, requiring the prevailing side to receive 100% of its legal entitlements. An arbitrator's disregard of such a command would be reviewable under 9 U.S.C. sec.10(a)(4). But when the parties agree to arbitrate without specifying a rule of decision, as Watts and Tiffany did, then the arbitrator has considerable leeway so long as he respects the limits the parties' contract and public law place on his discretion. This arbitrator did not disregard the parties' contract, did not direct them to violate the law, and did not otherwise overstep the terms of his engagement. The district court therefore properly enforced the award as written.
Affirmed

Williams, Circuit Judge, concurring in the judgment. The question of the continuing justification for and the proper interpretation

of the manifest disregard of the law doctrine is not squarely before this court. Indeed, with little effort we may dispose of Watts's claim under the manifest disregard doctrine as it presently exists. I would therefore reserve for another day--when the question is more definitively placed before this court--whether we need to make any substantial change in the manifest disregard doctrine. Accordingly, I concur only in the judgment.

I

  Because the majority has effectively rejected the manifest disregard doctrine, I will briefly express my concern with that holding. It should be noted that the doctrine of manifest disregard has been substantively uniform in the federal courts, requiring that (1) the arbitrator knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrator was well-defined, explicit and clearly applicable to the case. E.g., Greenberg v. Bear, Stearns & Co., 220 F.3d 22, 28 (2d Cir. 2000), cert. denied, 121 S. Ct. 770 (2001); Health Servs. Mgmt. Corp. v. Hughes, 975 F.2d 1253, 1267 (7th Cir. 1992). Every court of appeals, including our own, has held that a court may review the decision of an arbitrator for "manifest disregard of the law," and has adopted, in substance, that very definition./1 Moreover, the words in the doctrine itself are more in accord with such an interpretation. See Montes v. Shearson Lehman Bros., Inc., 128 F.3d 1456, 1461-62 (11th Cir. 1997) (defining the words of the doctrine). The majority's holding conflicts with that precedent, and leaves the doctrine internally inconsistent and effectively impotent.

  The reasons the majority offer for rejecting manifest disregard do not appear to me so compelling as to require such a significant change in the law. They hold that manifest disregard should mean only that "an arbitrator may not direct the parties to violate the law," ante, at 5, which  the arbitrator could not do anyway, see Hill v. Norfolk & W. Ry. Co., 814 F.2d 1192, 1195 (7th Cir. 1987). In so holding, the majority ostensibly rests its interpretation on Eastern Associated Coal Corp. v. United Mine Workers of America, District 17, 121 S. Ct. 462 (2000). But Eastern Associated Coal is not a manifest disregard case, and its holding, or its dicta, does not support the majority's new interpretation of the manifest disregard doctrine. In that case, the arbitrator interpreted a collective bargaining agreement in accord with the authority actually granted to him by the parties, and provided an award under the

agreement. Id. at 466-67. The Court therefore treated the arbitral award "as if it represented an agreement between Eastern and the union," for purposes of determining whether enforcement of that contract (like any other) violated public policy. Id. at 467 (citing W.R. Grace & Co. v. Rubber Workers, 461 U.S. 757, 766 (1983)). Defining the public policy exception, the Court reiterated that review under the doctrine applies to violations of public norms (but not exclusively positive law), which is what "public policy" means. Id. at 467.

Eastern Associated Coal does not support the broad proposition that "an arbitrator acts as the parties' agent and as their delegate may do anything the parties may do directly," as the majority appears to contend. Ante, at 5. Rather, Eastern Associated Coal holds that because the parties authorized the arbitrator to interpret the contract and the arbitrator acted within the scope of his authority in interpreting the contract, see id. at 466 (emphasis added), we must treat the contract as one between the parties. Id. at 467. That rationale stands contrary to the conclusion of the majority, because when an arbitrator acts in manifest disregard of the law, he acts outside the scope of his authority. When an arbitrator is interpreting statutory law, she is bound to follow the law in the absence of a valid and legal agreement not to do so. See Montes, 128 F.3d at 1459. And if not interpreting the parties' contract, the arbitrator is bound by the clear and explicit commands of the law, unless the parties indicate otherwise.

To review, the question before us in an arbitral contract interpretation case is not "whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract." Hill, 814 F.2d at 1194-95. And, when an arbitrator interprets statutory law, we require "something beyond and different from mere error in law or failure on the part of the arbitrators to understand or apply the law." Health Servs., 975 F.2d at 1267. We ask whether she affirmatively disregarded what she knew to be the law. Id. The rules that govern review of arbitral contract interpretation and review of arbitral statutory interpretation do not create tension in the law. The standards are nearly identical, and they complement each other rather well.

The apparent conflict the majority finds in this circuit's precedent, see ante, at 4, is not

really conflict at all, as much as it is two separate lines of cases that together illustrate the difficultly for parties seeking to challenge an arbitral award under the manifest disregard doctrine. It is a difficulty recognized by other circuits, see, e.g., Dawahare, 210 F.3d at 669 ("Arbitrators are not required to explain their decisions. If they choose not to do so, it is all but impossible to determine whether they acted with manifest disregard for the law."), but that difficulty has not always precluded a finding that an arbitrator manifestly disregarded the law, see Halligan v. Piper Jaffray Cos., Inc., 148 F.3d 197, 204 (2d Cir. 1998) ("We merely observe that where a reviewing court is inclined to find that arbitrators manifestly disregarded the law or the evidence and that an explanation, if given, would have strained credulity, the absence of explanation may reinforce the reviewing court's confidence that the arbitrators engaged in manifest disregard."), and no courts have taken the step of discarding the entire doctrine because of this difficulty.

As a final note, mandatory arbitration clauses are prevalent in a broad collection of contracts, forcing parties to accept the arbitral rather than judicial forum to adjudicate their rights. Recognizing this concern, the Supreme Court has admonished that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." Mitsubishi Motors Co. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985). Even if we were to adopt the agency model advanced by the majority, no one expects that the parties intended to vest in that agent the power to ignore statutory law willy-nilly and decide the fate of the parties at her whim or caprice. Indeed, we do not accept an arbitrator's decision to ignore completely a contract, although under the agency model arguably we should, because the parties could rescind their contract entirely and fashion a completely new agreement. But the agency fiction falls apart. The arbitrator is not the parties, and, in truth, she is not their agent; therefore when the arbitrator acts in manifest disregard of statutory law, there is no compelling reason that we should not intervene and protect the statutory rights of the parties--otherwise the parties would be better off flipping a coin. With all deference to the majority, I would preserve this important question for a case in which it truly matters.

II

Turning then to the case before us, Watts has

failed to demonstrate that the arbitrator manifestly disregarded the law. Watts cannot establish, as it must, that the Wisconsin Fair Dealership Law ("WFDL"), or Wisconsin case law, is "well-defined" and "explicit" in requiring a mandatory award of attorney fees to every successful litigant under the statute./2 The statute states that "[i]f any grantor violates this chapter, a dealer may bring an action against such grantor in any court of competent jurisdiction for damages sustained by the dealer as a consequence of the grantor's violation, together with the actual costs of the action, including reasonable actual attorney fees." Wis. Stat. sec. 135.06. The plain language of this statute clearly allows for the recovery of attorney fees, but it does not go so far as to state that such recovery is mandatory.

Perhaps recognizing the weakness of an appeal to statutory language, Watts also relies upon several cases in support of its theory that attorney fees are mandatory. The best case cited by Watts, Siegel v. Leer, Inc., 457 N.W.2d 533 (Wis. Ct. App. 1990), characterized the attorney fees provision as an "express statutory right of a dealer to recover for a grantor's violation of the WFDL," stating in addition that the "failure to protect and enforce such a right would fly in the face of the statutory purpose." Id. at 537. But Watts fails to put this quote in context. The court in that case distinguished the award of attorney fees from another case in which a court-initiated fine, under analogous factual circumstances, was found to violate public policy. It was in that context, distinguishing the case upon which the defendant argued that attorney fees could violate public policy, that the court stated that the right to attorney fees was expressly provided by statute. It did not hold, however, that attorney fees are mandatory. See id. The other cases that characterize attorney fees as an "entitlement" under the statute, see, e.g., Esch v. Yazoo Mfg. Co., Inc., 510 F. Supp. 53, 58 (E.D. Wis. 1981), are in themselves equally ambiguous.

Tiffany, on the other hand, relies upon a commentary reviewing Wisconsin law on the WFDL that concludes, "[t]he issue of whether an award is mandatory or discretionary is still open." Andrew O. Riteris & Susan R. Robertson, The Fair Dealership Law: Good Cause For Review, Wis. B. Bull., Mar. 1986, at 10. In the end, the WFDL may one day be interpreted to require mandatory award of attorney fees, but that is not for this court to decide today.

Because I cannot find that mandatory award of attorney fees under the WFDL is well-defined and

explicit under the law, as required by the manifest disregard of the law doctrine, I must find that Watts has failed to make the requisite showing under that doctrine. I therefore concur in the judgment.

/1 See Greenberg v. Bear, Stearns & Co., 220 F.3d 22 (2d Cir. 2000), cert. denied, 121 S. Ct. 770 (2001); Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217 (11th Cir. 2000); Dawahare v. Spencer, 210 F.3d 666 (6th Cir.), cert. denied, 121 S. Ct. 187 (2000); Williams v. Cigna Fin. Advisors Inc., 197 F.3d 752 (5th Cir. 1999), cert. denied, 529 U.S. 1099 (2000); Koveleskie v. SBC Capital Mkts., Inc., 167 F.3d 361 (7th Cir. 1999), cert. denied, 528 U.S. 811 (1999); Kiernan v. Piper Jaffray Cos., Inc., 137 F.3d 588 (8th Cir. 1998); Barnes v. Logan, 122 F.3d 820 (9th Cir. 1997), cert. denied, 523 U.S. 1059 (1998); Cole v. Burns Int'l Security Servs., 105 F.3d 1465 (D.C. Cir. 1997); Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503 (3d Cir. 1994), aff'd, First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995); ARW Exploration Corp. v. Aguirre, 45 F.3d 1455 (10th Cir. 1995), cert. denied, Armenis v. Aguirre, 525 U.S. 822 (1995); Remmey v. PaineWebber, Inc., 32 F.3d 143 (4th Cir. 1994), cert. denied, 513 U.S. 1112 (1995); Advest, Inc. v. McCarthy, 914 F.2d 6 (1st Cir. 1990); see also Flex-Foot, Inc. v. CRP, Inc., 238 F.3d 1362 (Fed. Cir. 2001).

/2 Tiffany argues as an initial matter that it is unclear whether the arbitrator decided the case under the WFDL. I find this position unpersuasive. This court need not strain credulity to support an arbitral award, simply because the arbitrator did not explicitly state the grounds for her decision. See Halligan, 148 F.3d at 204. There is ample evidence in the record showing that Watts abandoned its other contract claims, and that the only remaining basis under which the arbitrator could have decided this case was the WFDL. That the arbitrator may not have correctly applied the statute will not frustrate a court's review for manifest disregard of the law.