# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 02-1952

BUTLER MANUFACTURING COMPANY,

*Plaintiff-Appellee*,

v.

UNITED STEELWORKERS OF AMERICA,
AFL-CIO-CLC and LOCAL 2629,
UNITED STEELWORKERS OF AMERICA,

*Defendants-Appellants.*

———————

Appeal from the United States District Court
for the Central District of Illinois.
No. 01-C-1149—**Joe Billy McDade**, *Chief Judge.*

———————

ARGUED OCTOBER 30, 2002—DECIDED JULY 17, 2003

———————

Before FLAUM, *Chief Judge*, and BAUER and DIANE P.
WOOD, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* Agreements to arbitrate
disputes have been a common feature of collective bargain-
ing agreements for quite some time. They are entitled to a
hospitable reception in the courts, so that they can play
their role of reducing industrial strife and maintaining a
harmonious workplace. In this appeal, we must decide
whether the district court correctly concluded that a labor
arbitrator exceeded the scope of his contractual authority
when he resolved a dispute between Butler Manufacturing
Company and Michelle McMahill, who was a member of the
United Steelworkers of America, Local 2629 (the Union).

Butler claimed, and the district court agreed, that the arbitrator strayed too far beyond his powers when he applied the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*, to help resolve the dispute, which concerned possible excuses for some of McMahill's absences. The court therefore granted Butler's motion for summary judgment in its suit to vacate the arbitral award, which it brought under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. We conclude that the award should have been enforced, both because it had an adequate basis in the parties' Collective Bargaining Agreement (CBA), and independently because both parties agreed to allow the arbitrator to take the FMLA into account in his decision. We therefore reverse.

## I

Butler manufactures pre-engineered metal buildings in its Galesburg, Illinois, plant. Shifts operate around the clock, seven days per week. The Union represents various Butler employees, including McMahill, who was hired in August 1994 to work the midnight to 7:00 a.m. shift. Butler and the Union were parties to a CBA that was in effect at all times relevant to this appeal.

In 1995, Butler and the Union jointly executed a Memorandum of Understanding (MOU) that set forth and incorporated into the CBA a detailed absenteeism policy. Based on the absenteeism policy that had been in place for the prior fifteen years, the 1995 MOU establishes a point system pegged to the frequency and types of employee absences. The policy assesses points for what are called "absence occurrences" attributable to personal or family member illness or personal business. Failure to report an absence prior to the start of a shift results in the imposition of absence occurrence points. When an employee accumulates six or more absence occurrence points within a six-month period, she is subject to discipline. The MOU also sets forth the

various disciplinary steps, which build up from oral warnings, written reprimands, suspension, to termination.

The basic concept of the MOU absenteeism policy is that "employees are expected to be at work every scheduled workday and to be there on time. The reasons for absences should be limited to those of a necessary and compelling nature." Butler defined an absence of a necessary and compelling nature as one involving "an emergent situation that required urgent action on the part of the employee, and [that] was beyond the control of the employee and [for which] a reasonable alternative to work absence did not exist." In 1996, Butler tweaked the absenteeism policy after it conducted a 20-month review of its employees' medical absences.

Several years later, in October 1999, Butler notified McMahill that she had three or more non-compelling absences during the preceding six months. She was told that "until April 6, 2000 personal, non-occupational medical absences submitted by you for compelling reason absence consideration will only be approved if they fall within the sick leave provisions of the Agreement, or are qualified under the FMLA, or are clearly of an emergency nature."

After McMahill received notice that she could not miss any more work that did not qualify as personal sick leave, an emergency, or under the FMLA, she missed three additional days. On November 4, 1999, she missed one complete shift to remain at home with her husband, who had been injured in a fight. Six days later, McMahill missed another shift in order to stay home with her sick son. Then, on December 23, 1999, McMahill was absent again because her other son was ill. McMahill asked Butler to find that each of these absences was supported by a compelling reason, but each time Butler refused and charged her with an additional absence occurrence. On January 6, 2000, McMahill missed yet another shift. This time she sought and obtained

permission to take a personal leave of absence. By the end of McMahill's leave there was some confusion over her employment status in light of a conversation that she had with one of her superiors while on leave. Nevertheless, McMahill returned to work on February 3, 2000. This was several days after the expiration of her leave of absence, and she had not obtained the Company's approval to extend her leave. The Company held a disciplinary hearing on February 7, 2000, after which it terminated her for excessive absenteeism.

The Union contested McMahill's termination. When the parties were unable to reach an agreement, they submitted the dispute to arbitration. A full hearing was held before an arbitrator selected by both parties. At the hearing, the arbitrator heard testimony from two Butler employees, one Union officer, and McMahill herself. Following the hearing, each side filed a brief for the arbitrator's consideration. In its brief, Butler argued that McMahill lacked justification for missing an entire shift to look after her injured husband. It specifically invited the arbitrator to look to the FMLA in resolving the question of justification, by arguing that "[t]he documentation provided for this absence prior to the grievant's termination clearly showed that it was not qualified under FMLA." Likewise, Butler's brief asserted that McMahill's second absence related to her son's illness was not covered by the FMLA.

After considering the parties' oral and written presentations, the arbitrator ruled that McMahill's absences on November 4 and 10, 1999, and on December 23, 1999, were each qualified absences under the FMLA. Accordingly, he found her termination unsupported by just cause and ordered her reinstated with half back-pay.

Unhappy with the outcome in arbitration, Butler filed this § 301 action in federal court, seeking an order vacating the arbitrator's award. On cross-motions for summary judg-

ment, the district court found that the arbitrator acted outside of his contractual authority when he turned to the FMLA to assess the propriety of Butler's termination of McMahill. It found that the parties had not incorporated the FMLA into their agreement, and therefore that the arbitrator was not free to rely on that law in considering McMahill's termination.

## II

A court's role in reviewing an arbitral award is quite limited. Apart from the general reasons for setting aside any arbitral award found in the Federal Arbitration Act, 9 U.S.C. § 10, the court may consider only whether an arbitrator exceeded the scope of the authority conferred upon her by the parties' actions and agreements. *Northern Indiana Pub. Serv. Co. v. United Steel Workers of Am.*, 243 F.3d 345, 346-47 (7th Cir. 2001). With few exceptions, as long as the arbitrator does not exceed this delegated authority, her award will be enforced. This is true even if the arbitrator's award contains a serious error of law or fact. *Major League Baseball Players Assoc. v. Garvey*, 532 U.S. 504, 509 (2001) (*per curiam*); *Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*, 990 F.2d 957, 960 (7th Cir. 1993). Otherwise, as we have pointed out in the past, arbitration would just be the first of a series of steps that always culminated in court litigation, and it would lose its *raison d'être.* See *Flexible Mfg. Sys. Pty. Ltd. v. Super Prods. Corp.*, 86 F.3d 96, 100 (7th Cir. 1996). We review the district court's decision to grant Butler summary judgment and vacate the arbitrator's award *de novo. Amax Coal Co. v. United Mine Workers of Am., Int'l Union*, 92 F.3d 571, 574 (7th Cir. 1996).

In order to assess whether the arbitrator exceeded his contractual authority to resolve the parties' dispute, we look first at the specific provisions of the CBA and the agreement to arbitrate it contains. In addition, we may also

consult the parties' submissions in arbitration to see if there was a post-dispute agreement to submit additional questions to the arbitrator.

Looking first at the pre-dispute agreement to arbitrate contained in the CBA, we find that it is a broad one, that commits the parties to arbitrate any "differences as to the meaning and application of this Agreement, other than with respect to the right of the Company to contract or sub-contract work." Article 10, paragraph 91. As long as the arbitrator's award draws its essence from the parties' CBA, it must be enforced. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987) (quoting *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)); *Dean v. Sullivan*, 118 F.3d 1170, 1171 (7th Cir. 1997). In deciding whether an award draws its essence from the parties' agreement, the reviewing court must do no more than assure itself that "the arbitrator's interpretation can in some rational manner be derived from the collective bargaining agreement." *Dean*, 118 F.3d at 1171 (quoting *Nat'l Wrecking*, 990 F.2d at 960).

Several provisions of the CBA are relevant to the question of what law the arbitrator was authorized to apply. Two paragraphs in Article 2 of the CBA address issues of workplace discrimination and employment opportunities. They are as follows:

> 12. Section 5. The Company and Union agree that neither will discriminate against any employee because of race, color, religion, sex, age, national origin, disability or Vietnam Era Veteran status.

> 13. Butler Manufacturing Company offers equal opportunity for employment, advancement in employment, and continuation of employment to all qualified individuals in accordance with the provisions of law and in accordance with the provisions of this Agreement for the represented employees covered by it.

The Union argued that these provisions gave ample authority for the arbitrator to take the FMLA into account, as he interpreted the absenteeism policy and the question whether some or all of McMahill's absences were justified. The district court disagreed. It labeled the language of Article 2, paragraph 13, as nothing but boilerplate anti-discrimination commitments that did not necessarily pull the FMLA into the agreement. If there were some kind of "clear statement" rule that applied to CBAs, and to the match between a CBA and an arbitrator's authority, perhaps this would have been right. But there is no such rule. Instead, as we noted above, the standard asks only whether the arbitrator's interpretation can rationally be linked to the CBA. Here, a broader look at the two provisions above demonstrates that the arbitrator's award did draw its essence from the parties' agreement. Article 13, for example, does not say only that there will be "equal opportunity for employment . . . in accordance with the provisions of this Agreement. . .," which is the portion the district court quoted. In the ellipsis between the word "employment" and the last phrase comes the phrase "in accordance with the provisions of law." We have no reason to think that this reference to external law is either surplusage or "mere boilerplate." (We note, incidentally, that we have no hesitation in holding parties to the "boilerplate" in their contracts, equally with more obviously negotiated terms. *Rissman v. Rissman*, 213 F.3d 381, 385 (7th Cir. 2000).) We find that Article 2, paragraph 13 conferred on the arbitrator the authority to consider the FMLA. For this reason, there is no need to consider whether the savings provision contained in Article 13, paragraph 131, provided additional authorization for the arbitrator to consider external law, as the Union urges.

Indeed, a contrary holding would be quite troublesome, in light of the Supreme Court's green light for the arbitration

of employment disputes of all kinds in its recent decision in *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001). The Court has made it clear that arbitrators are capable of handling statutory claims, and that parties may make effective agreements that commit such claims to an arbitral process. If one were to turn around and find that the parties were compelled to arbitrate a labor dispute, but that statutory claims had to be the subject of separate litigation, the end result would be wasteful duplication of proceedings, at best, and an undermining of arbitral tribunals, at worst. We note, however, that this case does not require us to confront a different issue that the Supreme Court has reserved: namely, whether a union can waive an employee's right to judicial review of statutory claims. See, *e.g.*, *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 79-82 (1998). McMahill prevailed in the arbitration, and so she has no quarrel with the fact that the arbitrator resolved her statutory claim, and Butler waived any right it might have had to keep statutory claims out of the arbitration by its submissions to the arbitrator, to which we now turn.

Even if the CBA had been vaguer about the relevance of statutory protections to the parties' agreement, in this case there is a second reason for finding that the arbitrator stayed well within his authorized powers. As we noted briefly above, during the course of the arbitration, it became clear that both sides were willing to allow the arbitrator to consider the FMLA. Once again, at a very broad level the Supreme Court has acknowledged that agreements to arbitrate might be reached before any dispute has arisen (as in the CBA here), or they might be reached after the dispute. See generally *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 633 (1985). The only task, as in the case of a pre-dispute agreement, is to make sure that the parties really have entered into an agreement to resolve the post-agreement dispute through arbitration.

In cases where the parties expand the scope of arbitral authority through their submissions to the arbitrator, it is important to look both at the contract's arbitration provisions and the parties' submissions to determine first what authority the arbitrator was given, and second whether that authority was exceeded. See *Am. Postal Workers Union v. Runyon*, 185 F.3d 832, 835-36 (7th Cir. 1999); *cf. General Motors Corp. v. Pamela Equities Corp.*, 146 F.3d 242, 246 (5th Cir. 1998); *John Sorrell & Co. v. Local Union 304A of the United Food & Commercial Workers*, 913 F.2d 544, 560 (8th Cir. 1990); *United Food & Commercial Workers, Local Union No. 7R v. Safeway Stores, Inc.*, 889 F.2d 940, 946 (10th Cir. 1989); *Mobil Oil Corp. v. Indep. Oil Workers Union*, 679 F.2d 299, 302 (3d Cir. 1982). In the case of submissions (as opposed to a clear post-dispute agreement to arbitration), the court must also make sure that the arbitrator's consideration of the new issue would not violate any other provision of the agreement, see *Safeway Stores, Inc.*, 889 F.2d at 946, assuming that the parties did not observe whatever formalities were required to modify the underlying agreement itself.

During the arbitration hearing, witnesses who testified on Butler's behalf explained that McMahill received a letter informing her that for the next six months, only FMLA-approved absences or absences due to an emergency would be approved; all other absences would result in the accrual of additional absence occurrence points. In order to resolve the dispute that the parties submitted, the arbitrator had no choice but to consider whether the three absences that Butler relied on to justify terminating McMahill were FMLA-approved or of an emergency nature. If he had not done so, he would have failed to discharge the duty delegated to him by the parties to resolve their dispute.

Likewise, the post-hearing brief that Butler filed with the arbitrator contained explicit references to the FMLA.

Butler's brief stepped through the three absences in order to demonstrate that none were FMLA qualified. Not only did Butler present its position on why these absences were not FMLA qualified to the arbitrator, it also shored up this analysis with citations to federal court decisions construing the FMLA. As Butler put it, "[t]o construe the FMLA to include conditions which, although minor in their initial stages, could evolve into serious illnesses would bring into the statute virtually every common malady, and that is in direct conflict with Congress' intent." In making this argument, Butler invited the arbitrator to find that McMahill's absences because of her husband's injuries or her children's sicknesses were insignificant maladies not covered by the FMLA. Only after the arbitrator disagreed with Butler's application of the FMLA to these particular absences did the company argue that he lacked authority to consider this issue in the first place.

Butler cannot have it both ways. Principles of estoppel prevent a party to arbitration from taking a position before the arbitrator that invites consideration of external law, losing in arbitration, and then seeking relief from the unfavorable arbitral award in federal court by arguing that the arbitrator lacked authority to consider the law in the first instance. *AGCO Corp. v. Anglin*, 216 F.3d 589, 593 Cir. 2000) ("If a party willingly and without reservation allows an issue to be submitted to arbitration, he cannot await the outcome and then later argue that the arbitrator lacked authority to decide the matter."). Without a reservation of rights, Butler took the position in arbitration that McMahill's absences were not FMLA qualified. Its failure to reserve the question of the applicability of the FMLA means that it has waived that argument. *Dean*, 118 F.3d at 1172-73. We would undermine the concept of finality in arbitration if we allowed Butler to prevail on its claim that the arbitrator lacked authority to consider the FMLA after Butler not only failed to reserve this question

in arbitration, but actually placed the FMLA at the center of the parties' dispute.

Perhaps anticipating that we might reach this conclusion, Butler asks that we affirm the district court's opinion vacating the arbitral award because the arbitrator's order failed to make explicit how the parties' agreement or submissions authorized him to consider the FMLA. The district court was persuaded that the arbitrator's failure to refer to the CBA or to offer any other explanation for the source of his authority to consider the FMLA meant that the arbitrator's "decision does not draw its essence from the contract, but instead reflects his own notions of industrial justice in light of the rights given employees under the FMLA."

While we acknowledge that the arbitrator did not include any explanation of this point in his written award, that fact does not mean that there is no "justifiable basis" for the arbitrator's decision. Arbitrators are normally not required to write any opinion at all, see *Enterprise Wheel*, 363 U.S. at 598; *Sullivan v. Lemoncello*, 36 F.3d 676, 683 (7th Cir. 1994), and it is worth reiterating that a court's review of an arbitral award does not proceed under the same principles that would apply if it were reviewing a decision of the Social Security Administration or a bankruptcy court. Using whatever materials are available, the court must enforce the arbitral award "[s]o long as the [arbitrator's] interpretation can in some rational manner be derived from the agreement, viewed in the light of its language, its context, and other indicia of the parties' intention." *Amoco Oil Co. v. Oil, Chem. & Atomic Workers Int'l Union, Local 7-1, Inc.*, 548 F.2d 1288, 1294 (7th Cir. 1977); see also *Dean*, 118 F.3d at 1171; *Mobil Oil Corp.*, 679 F.2d at 302. As we have already explained, Article 2, paragraph 13 of the CBA allowed the arbitrator to consider external law and the parties framed the arbitration proceedings to force consideration of the FMLA. In short, this arbitral award should be enforced because it is supported by the terms of the parties' agreement and thus lay well within the arbitrator's author-

ity despite the fact that the arbitrator's opinion did not spell this out.

Finally, Butler makes a last ditch effort to save the district court's order vacating the arbitral award by arguing that the arbitrator's decision so grossly misapplied the FMLA that it constitutes a manifest disregard of law. We rejected a similar argument in *George Watts & Son, Inc. v. Tiffany & Co.*, 248 F.3d 577 (7th Cir. 2001), which recently clarified that an arbitral decision is in manifest disregard of the law only when the arbitrator's award actually orders the parties to violate the law. *Id.* at 580. That the arbitrator in this case may have misunderstood the FMLA is simply not relevant. *Id.* at 579. Butler agreed to resolve this dispute in arbitration and cannot now complain that the bargained-for result—an arbitrator's resolution of the dispute—is not what it would have obtained in court.

## III

For these reasons, we VACATE the district court's order and ENFORCE the arbitral award.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*