# United States Court of Appeals for the Federal Circuit

2007-1317

DATATREASURY CORP.,

Plaintiff-Appellee,

v.

WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A.,

Defendants-Appellants,

and

BANK OF AMERICA CORPORATION, BANK OF AMERICA, N.A., U.S. BANCORP, U.S. BANK, N.A., WACHOVIA CORPORATION, WACHOVIA BANK, N.A., SUNTRUST BANKS, INC., SUNTRUST BANK, BB&T CORPORATION, BRANCH BANKING AND TRUST COMPANY, BANCORPSOUTH, INC., BANCORP SOUTH BANK, COMPASS BANCSHARES, INC., COMPASS BANK, CULLEN/FROST BANKERS, INC., THE FROST NATIONAL BANK, FIRST HORIZON NATIONAL CORPORATION, FIRST TENNESSEE BANK, N.A., HSBC NORTH AMERICA HOLDINGS, INC., HSBC BANK USA, N.A., HARRIS BANKCORP, INC., HARRIS, N.A., NATIONAL CITY CORPORATION, NATIONAL CITY BANK, ZIONS BANCORPORATION, ZIONS FIRST NATIONAL BANK, BANK OF NEW YORK CO., INC., THE BANK OF NEW YORK CO., INC., UNIONBANCAL CORPORATION, UNION BANK OF CALIFORNIA, N.A., BANK OF TOKYO-MITSUBISHI UFJ, LTD., CITIZENS FINANCIAL GROUP, INC., COMERICA INCORPORATED, COMERICA BANK & TRUST, N.A., FIRST CITIZENS BANCSHARES, INC., FIRST CITIZENS BANK & TRUST COMPANY, KEYCORP, KEYBANK NATIONAL ASSOCIATION, LASALLE BANK CORPORATION, DEUTSCHE BANK TRUST COMPANY AMERICAS, LASALLE BANK, N.A., M&T BANK CORPORATION, M&T BANK, THE PNC FINANCIAL SERVICES GROUP, INC., PNC BANK, N.A., SMALL VALUE PAYMENTS COMPANY, LLC, REMITCO, LLC, THE CLEARING HOUSE PAYMENTS COMPANY, LLC, FIRST DATA CORPORATION, TELECHECK SERVICES, INC., ELECTRONIC DATA SYSTEMS CORP., UBS AMERICAS, INC., THE BANK OF NEW YORK, and VIEWPOINTE ARCHIVE SERVICES, LLC,

Defendants.

Karl A. Rupp, Provost Umphrey, L.L.P., of Dallas, Texas, argued for plaintiff-appellee.

Jay F. Utley, Baker & McKenzie LLP, of Dallas, Texas, argued for defendants-appellants. With him on the brief were John G. Flaim, Kevin M. O'Brien, Nathan A. Engels, and W. Barton Rankin. Of counsel was Kevin J. Sullivan.

Appealed from: United States District Court for the Eastern District of Texas

Judge David J. Folsom

# United States Court of Appeals for the Federal Circuit

2007-1317

DATATREASURY CORP.,

Plaintiff-Appellee,

v.

WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A.,

Defendants-Appellants,

and

BANK OF AMERICA CORPORATION, BANK OF AMERICA, N.A., U.S. BANCORP, U.S. BANK, N.A., WACHOVIA CORPORATION, WACHOVIA BANK, N.A., SUNTRUST BANKS, INC., SUNTRUST BANK, BB&T CORPORATION, BANCORP SOUTH BANK, COMPASS BANCSHARES, INC., COMPASS BANK, CULLEN/FROST BANKERS, INC., THE FROST NATIONAL BANK, FIRST HORIZON NATIONAL CORPORATION, FIRST TENNESSEE BANK, N.A., HSBC NORTH AMERICA HOLDINGS, INC., HBSC BANK USA, N.A., HARRIS BANKCORP, INC., HARRIS, N.A., NATIONAL CITY CORPORATION, NATIONAL CITY BANK, ZIONS BANKCORPRATION, ZIONS FIRST NATIONAL BANK, BANK OF NEW YORK CO., INC., THE BANK OF NEW YORK CO., INC., UNIONBANCAL CORPORATION, UNION BANK OF CALIFORNIA, N.A., BANK OF TYKYO-MITSUBISHI UFJ, LTD., CITIZENS FINANCIAL GROUP, INC., COMERICA INCORPORATED, COMERICA BANK&TRUST, N.A., FIRST CITIZENS BANCSHARS, INC., FIRST CITIZENS BANK & TRUST COMPANY, KEYCORP, KEYBANK NATIONAL ASSOCIATION, LASALLE BANK CORPORATION, DEUTSCHE BANK TRUST COMPANY AMERICAS, LASALLE BANK, N.A., M&T BANK CORPORATION, M&T BANK, THE PNC FINANCIAL SERVICES GROUP, INC., PNC BANK,N.A., SMALL VALUE PAYMENTS COMPANY, LLC, REMITCO, LLC, FIRST DATA CORPORATION, TELECHECK SERVICES, INC., ELECTRONIC DATA SYSTEMS CORP., USB AMERICAS, INC., THE BANK OF NEW YORK, and VIEWPOINTE ARCHIVE SERVICES, LLC,

Defendants.

Appeal from the United States District Court for the Eastern District of Texas in case no. 2:06-CV-72, Judge David J. Folsom.

DECIDED: April 16, 2008

Before MAYER, and BRYSON, <u>Circuit Judges</u>, and FOGEL,[*] <u>District Judge</u>.

FOGEL, <u>District Judge</u>.

Wells Fargo & Company ("WFC") and Wells Fargo Bank, N.A. (collectively, "Appellants") appeal an order of the United States District Court for the Eastern District of Texas denying Appellants' motion to dismiss or stay litigation pending arbitration brought by Datatreasury Corp. ("Appellee"). This Court heard oral argument on November 6, 2007. Because the parties are not bound by the operative arbitration clause, we <u>affirm</u>.

I.

In December 2003, one of WFC's subsidiaries, Wells Fargo Services Corp. ("WFSC") entered into a software license agreement with e-Banc LLC ("e-Banc") and WMR e-Pin LLC ("WMR"). This agreement, the Software License Agreement Schedule 2 ("Schedule 2"), provided WFSC with rights to certain software, including software that "provides ability to provide net settlement services."[1] Schedule 2 also memorialized the following side agreement:

---

[*] Honorable Jeremy Fogel, District Judge, United States District Court for the Northern District of California, sitting by designation.

[1] The Patent License Agreement defines "net settlement services" as:

national net settlement services, including, without limitation, data collection, member profile capabilities, settlement, billing, reports, enhancements, and other functions described in Schedule 2, and all attending, accompanying and other services, functions, capabilities, rights,

WMR . . . shall sign a side agreement representing and warranting that it has the rights to license its Central Check Clearing System patent relating to national net settlement (No. 5,265,008) ("Patent") and shall grant Wells Fargo a royalty free license to . . . use such Patent for the term of the License hereunder . . . .

In 2004, WFSC entered into a Patent License Agreement ("PLA") with WMR. The PLA between WFSC and WMR contained six clauses that are relevant to this case:

(1) <u>PLA License Grant</u>

WMR hereby grants Wells Fargo a non-exclusive, fully paid-up, royalty free worldwide right and license under and to the Patent, and any rights that may be embodied in the Patent, for the purpose of enabling Wells Fargo, or any of its Affiliates, to use or utilize the Licensed Products for providing and performing, directly or indirectly, any Net Settlement Services (the "License").

(2) <u>PLA Definition of the Patent Being Licensed</u>

"Patent" means the U.S. Patent No. 5,265,007, entitled "Central Check Clearing System," issued on or about November 23, 1993, and all applications and patent disclosures related thereto, and all provisionals, reissuances, continuations, continuations-in-part, divisionals, revisions, renewals, extensions, substations, conversions, and reexaminations thereof, and all foreign and international counterparts and equivalents thereof.

(3) <u>Successorship Clause</u>

This agreement shall be binding upon and inure to the benefits of the Parties and their respective successors.

(4) <u>Anti-Assignment Clause</u>

[N]either Party may assign or transfer this Agreement, or any part thereof, without prior written consent of the other Party, which consent shall not be unreasonably withheld.

---

and uses permitted or granted under or pursuant to the Software License Agreement and schedules.

(6)  <u>Covenant Not to Sue Clause</u>

WMR covenants, for itself an on behalf of all of its Affiliates, not to sue or initiate or threaten any claim, action, litigation, arbitration or other proceeding against, and releases from liability, Wells Fargo or any of its Affiliates or Permitted Assignees . . . or users or beneficiaries of any Net Settlement services in any jurisdiction or under any laws anywhere in the world in connection with Wells Fargo's [or] Affiliates or Permitted Assignees' . . . use or utilization of or benefit from (i) the Licensed Products or (ii) any Net Settlement Services, or (iii) any rights granted under the Software License Agreement and the Schedule 2.

(7)  <u>Arbitration Clause</u>

Any dispute or disagreement arising between WMR and Wells Fargo concerning the applicability or interpretation of this License Agreement shall be resolved in accordance with the dispute resolution procedures specified in the software License Agreement.

The PLA also provides expressly "this agreement will be governed by and interpreted in accordance with the laws of the state of Minnesota." Neither Appellant nor Appellee is a party to the PLA.

In February 2006, WMR assigned four patents to Appellee: U.S. Patent No. 5,265,007 ("the '007 patent") and U.S. Patents Nos. 5,583,759; 5,717,868; and 5,930,778 (collectively, "patents-in-suit"). On February 24, 2006, Appellee filed a complaint in the Eastern District of Texas accusing Appellants of infringing the patents-in-suit. On January 8, 2007, Appellants moved to dismiss or, in the alternative, stay pending arbitration. Appellants asserted that the PLA prohibits Appellee from bringing an infringement action against them. Appellants argued that the term "patent" should be interpreted broadly under the PLA. Based on this interpretation, Appellants argued that as an assignee of the patents-in-suit, Appellee is bound by the PLA, including the covenant not to sue and the arbitration clause.

On April 24, 2007, the district court denied the motion to dismiss or stay. It

determined two issues: (1) whether Appellee may be compelled to arbitrate under the terms of the PLA; and (2) whether the patents-in-suit are within the scope of the PLA. Applying Minnesota law, the district court concluded that Appellee is not a party that may be bound by the PLA's arbitration clause, either in its own right or as a "successor" of WMR. The district court also held that a plain reading of the PLA did not support the conclusion that the word "patent" encompasses the patents-in-suit.

II.

"In a case involving the arbitrability of a claim, [the Federal Circuit] review[s] the district court's determination that the parties have contractually bound themselves to arbitrate disputes de novo, and its factual findings for clear error." Cont'l Ins. Co. v. Polish S.S. Co., 346 F.3d 281, 282 (Fed. Cir. 2003). Regional circuit law is applied to contractual disputes, including disputes involving license agreements. McCoy v. Mitsubishi Cutlery, 67 F.3d 917, 920 (Fed. Cir. 1995) ("[W]hether express or implied, a license is a contract governed by ordinary principles of state contract law."). When determining the scope of an arbitration clause, the Fifth Circuit applies the state law that governs the agreement. Wash. Mut. Fin. Group v. Bailey, 364 F.3d 260, 264 (5th Cir. 2004).

In determining whether parties have agreed to arbitrate a particular dispute, courts in the Fifth Circuit consider: "(1) whether a valid agreement between the parties exists; and (2) whether the dispute in question falls within the scope of that arbitration agreement." OPE Int'l LP v. Chet Morrison Contractors, Inc., 258 F.3d 443, 445 (5th Cir. 2001); see also Pennzoil Exploration & Prod. Co., 139 F.3d 1061, 1064 (5th Cir. 1998) (noting that "[a]rbitration is a matter of contract between the parties, and a court

cannot compel a party to arbitrate a dispute unless the court determines the parties agreed to arbitrate the dispute in question"). "[T]he question of whether a party is bound by an agreement containing an arbitration provision is a threshold question for the Court to decide." Microchip Tech. Inc. v. U.S. Philips Corp., 367 F.3d 1350, 1357 (Fed. Cir. 2004) (internal quotations omitted). Because in deciding whether there is a valid agreement between the parties, the Fifth Circuit applies state law, see Fleetwood Enters., Inc. v. Gaskamp, 280 F.3d 1069, 1073 (5th Cir. 2002), the question of arbitrability in the instant case turns on whether, under Minnesota law, there is a valid agreement to arbitrate between Appellant and Appellee.

"[F]ederal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties; instead ordinary contract principles determine who is bound." Id. Applying basic principles of contract law, courts in Minnesota have held that a party is not bound by an arbitration clause unless it is a signatory to the underlying contract. See, e.g., State v. Cross Country Bank, Inc., 703 N.W. 2d 562, 569 (Minn. Ct. App. 2005) ("Arbitration is a matter of contract, and a party that has not agreed to arbitrate a dispute cannot be required to arbitrate."); see also Bridas S.A.P.I.C. v. Gov't of Turkm., 345 F.3d 347, 353 (5th Cir. 2003) ("In order to be subject to arbitral jurisdiction, a party must generally be a signatory to a contract containing an arbitration clause."); Westmoreland v. Sadoux, 299 F.3d 462, 465 (5th Cir. 2002) ("[I]t is well and good if the parties to a private agreement wish to choose an alternative dispute system, but [the Fifth Circuit] is wary of choices imposed after the dispute has arisen and the bargain has long since been struck.").

Appellants seek to enforce the arbitration provision of the PLA despite the fact that none of the parties involved in this litigation was a signatory to that agreement. Under Minnesota law, a non-signatory can enforce an arbitration clause in limited circumstances. For instance, a non-signatory may be compelled to arbitrate under theories of equitable estoppel, agency and third-party beneficiary. See Cross Country Bank, 703 N.W. 2d at 570. Likewise, in Bridas the court recognized six theories that may be asserted to bind a party that has not signed an arbitration agreement: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; (5) estoppel; and (6) third-party beneficiary. Id. at 357. Appellants do not contend that any of these theories applies in the instant case. Instead, they assert that Appellee is bound by the arbitration clause because it "runs with the patent."[2] However, Appellants cite no persuasive authority for their argument.

Appellants rely on cases standing for the general proposition that because the owner of a patent cannot transfer an interest greater than that which it possesses, an assignee takes a patent subject to the legal encumbrances thereon. See, e.g., Worley v. Tobacco Co., 104 U.S. 340 (1881) (holding that where an inventor's public use invalidated his patent assignee did not have title to a valid patent); Sanofi, S.A. v. Med-Tech Veterinarian Prods., 565 F. Supp. 931 (D.N.J. 1983) (holding that a patentee who had licensed the exclusive right to distribute his product in the United States could not subsequently assign that right because a patentee cannot transfer a right greater than it

---

[2]    The parties dispute the scope of the PLA. Appellants assert that the PLA applies to the patents-in-suit because they: (1) are "related" to the '007 patent and therefore are within the meaning of the PLA's patent definition; and (2) are patents for "net settlement services" subject to the covenant not to sue. Because the order of the district court may be affirmed for the reasons discussed in this opinion, we do not reach these issues.

possesses).  However, the legal encumbrances deemed to "run with the patent" in these cases involved the right to use the patented product, not a duty to arbitrate.  The cases do not support a conclusion that procedural terms of a licensing agreement unrelated to the actual use of the patent (e.g. an arbitration clause) are binding on a subsequent owner of the patent.

As viewed by the Fifth Circuit, requiring a non-signatory party to arbitrate solely on the basis of an arbitration clause in a license agreement between signatory parties would be inconsistent with basic principles of contract law and the Federal Arbitration Act, 9 U.S.C. § 2 et seq. ("FAA").  "Arbitration under the FAA is a matter of consent, not coercion."  Equal Employment Opportunity Comm'n v. Waffle House, Inc., 534 U.S. 279, 299 (2002).  The Fifth Circuit has explained:

> [W]e will read the reach of an arbitration agreement between parties broadly, but that is a different matter from the question of who may invoke its protections.  An agreement to arbitrate is a waiver of valuable rights that are both personal to the parties and important to the open character of our state and federal judicial systems-an openness this country has been committed to from its inception.  It is then not surprising that to be enforceable, an arbitration clause must be in writing and signed by the party invoking it.

Westmoreland, 299 F.3d at 465.

Neither party in this litigation signed the PLA or participated in negotiating any of its terms.[3]  Accordingly, the dispute between these parties is not subject to the arbitration clause of that agreement.  As this court previously has recognized, "a party cannot be compelled to arbitrate if an arbitration clause does not bind it."  Microchip,

---

[3] WFSC and WMR are the signatories of Schedule 2.  The record does not reflect a corporate affiliation between Appellee and either of the signatories.

367 F.3d at 1357. Accordingly, the district court's order denying Appellants' motion to dismiss or stay pending arbitration is affirmed.

AFFIRMED
