# United States Court of Appeals
# for the Federal Circuit

_____

**PROMEGA CORPORATION,**
*Plaintiff-Appellant,*

**and**

**MAX-PLANCK-GESELLSCHAFT ZUR FORDERUNG
DER WISSENSCHAFTEN E.V.,**
*Plaintiff,*

**v.**

**LIFE TECHNOLOGIES CORPORATION,
INVITROGEN IP HOLDINGS, INC.,
AND APPLIED BIOSYSTEMS, LLC,**
*Defendants-Appellees.*

_____

2011-1263

_____

Appeal from the United States District Court for the
Western District of Wisconsin in case no. 10-CV-0281,
Senior Judge Barbara B. Crabb.

_____

Decided: March 28, 2012

_____

JAMES R. TROUPIS, Troupis Law Office LLC, of Mid-
dleton, Wisconsin, argued for plaintiff-appellant. With
him on the brief was SUSAN R. PODOLSKY, of Alexandria,
Virginia.

KRISTINE E. JOHNSON, Parsons Behle & Latimer, Salt Lake City, Utah, argued for defendants-appellees. With her on the brief was FRANCIS M. WIKSTROM. Of counsel on the brief were AMY SUN and KURTIS D. MACFERRIN, Life Technologies Corporation, of Carlsbad, California.

---

Before RADER, *Chief Judge*, NEWMAN and DYK, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* DYK. Dissenting opinion filed by *Circuit Judge* NEWMAN.

DYK, *Circuit Judge*.

Promega Corporation ("Promega") appeals a decision of the United States District Court for the Western District of Wisconsin granting Invitrogen IP Holdings, Inc.'s ("IP Holdings") motion to compel arbitration. *Promega Corp. v. Life Techs. Corp.*, No. 10-cv-281 (W.D. Wis. Feb. 16, 2011) ("*Arbitration Order*"). Because the district court properly compelled arbitration, we affirm.

## BACKGROUND

In 1996, Research Genetics, Inc. ("Research Genetics") was the exclusive worldwide licensee of German patent number 38 34 636 and corresponding patents and patent applications in the United States, Europe, and Japan (collectively, the "licensed patents") relating to genetic identification, including U.S. Patent No. RE37,984 (the "984 patent"). On June 19, 1996, Research Genetics entered into a license agreement (the "1996 agreement") with Promega which granted Promega "an exclusive, worldwide, license under [the licensed patents] for the HUMAN GENETIC IDENTITY MARKET and the HUMAN CLINICAL MARKET" and a nonexclusive

license under the licensed patents for all other uses other than those exclusively reserved to Research Genetics. J.A. 646-47. Under the terms of the 1996 agreement, Promega was required to pay Research Genetics an initial license issue fee and a royalty on all products sold pursuant to the exclusive license grant. Additionally, under section 9.4 of the 1996 agreement, Promega had the right to sublicense the licensed patents. Additionally, section 22.1 of the 1996 agreement included an arbitration clause which provided that "[a]ll controversies or disputes arising out of or relating to this Agreement, or relating to the breach thereof, shall be resolved by arbitration." J.A. 658.

The 1996 agreement also provided that the agreement could "not be assigned by either party without the express written consent of the other party." J.A. 658. In 2001, in connection with Research Genetics' merger into its parent company, Invitrogen Corporation ("Invitrogen"), Promega granted written consent to assign Research Genetics' rights under the 1996 agreement to Invitrogen. In 2003, Promega granted Invitrogen written consent to assign its rights under the 1996 agreement to IP Holdings, a wholly-owned subsidiary of Invitrogen. On November 21, 2008, Invitrogen merged with Applied Biosystems Inc. ("AB"), one of Promega's sublicensees, and changed its name to Life Technologies Corporation ("Life Technologies"). IP Holdings remained a wholly owned subsidiary of Life Technologies.

After the merger with AB, Life Technologies obtained information that led it to conclude that Promega had been paying less than it was required to pay on Promega's sublicensees' sales of products incorporating the licensed patents. Life Technologies subsequently notified Promega of its alleged noncompliance with the terms of the 1996 agreement. Promega disagreed with Life Technologies' calculation of the royalties due. After negotiations be-

tween the parties failed to resolve the issue, on May 4, 2010, Life Technologies demanded arbitration pursuant to section 22.1 of the 1996 agreement, contending that Promega failed to comply with section 9.4 of the 1996 agreement and demanding an accounting of all sales of the licensed technology by Promega's sublicensees.

Rather than submit to arbitration, on May 26, 2010, Promega filed suit against Life Technologies in the United States District Court for the Western District of Wisconsin, seeking a declaratory judgment of non-arbitrability of Life Technologies' claims under the 1996 agreement, and alleging, *inter alia*, infringement of five United States patents, including the '984 patent. Specifically, Promega contended that the rights under the 1996 agreement had never been assigned to Life Technologies, and that Life Technologies was therefore not entitled to demand arbitration. In the course of preparing its responses to Promega's filings, Life Technologies discovered that IP Holdings had not assigned its rights under the 1996 agreement to Life Technologies. Accordingly, IP Holdings served Promega with a demand for arbitration on behalf of IP Holdings. IP Holdings also filed a motion to compel arbitration.

In response to IP Holdings' motion to compel arbitration, Promega argued, *inter alia*, that there was a substantial question as to the continued existence of IP Holdings and its authority to demand arbitration. In particular, Promega alleged that it had been informed by Life Technologies that IP Holdings was to be dissolved.[1]

---

[1] On May 1, 2009, Life Technologies and IP Holdings executed an agreement under which IP Holdings transferred its interests in all agreements to which it was a party to Life Technologies, with the exception of agreements requiring the consent of a third party prior to assignment. The agreement indicated that IP Holdings

The district court denied IP Holdings' motion to compel arbitration without prejudice to allow for limited discovery on the questions of whether IP Holdings was the current assignee of the 1996 agreement and whether IP Holdings maintained its legal existence. During the course of discovery, IP Holdings produced documentation demonstrating that Invitrogen had assigned its rights under the 1996 agreement to IP Holdings; that Promega had consented to the assignment; and that IP Holdings had not been dissolved and remained a corporation in good standing. Following this limited discovery, IP Holdings filed a second motion to compel arbitration.

On February 17, 2011, the district court entered an order compelling arbitration between Promega and IP Holdings with respect to those claims relating to the 1996 agreement. In its order, the district court found that IP Holdings was the assignee of the 1996 agreement, remained in existence, and that it was irrelevant that Promega alleged that IP Holdings was merely a "puppet" of Life Technologies, noting that Promega "cite[d] no authority for the proposition that a corporation cannot assert rights under a contract unless it has offices and employees or if all of its actions are directed by a parent company." *Arbitration Order*, slip op. at 6-7. The court further rejected the proposition that because IP Holdings

---

would "promptly seek consent" for all agreements requiring the consent of a third party for assignment and that the transfer of IP Holdings' rights under these agreements would be effective on the date consent was received. J.A. 1351. On September 11, 2009, Life Technologies notified Promega by letter that it was in the process of an internal restructuring which would involve the dissolution of IP Holdings and assignment of all agreements held by IP Holdings to Life Technologies. IP Holdings did not request Promega's consent to assign its rights under the 1996 agreement to Life Technologies.

had intended to assign its rights to Life Technologies and because Promega had not consented to that assignment, IP Holdings could no longer demand arbitration. Following the district court's order compelling arbitration, Promega's infringement claims against Life Technologies and AB, as well as other claims relating to a separate agreement between Promega and AB, remained pending before the district court. The district court's order was certified as a final order pursuant to Federal Rule of Civil Procedure 54(b).

Promega timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

In reviewing a district court's order compelling arbitration, we review "the district court's determination that the parties have contractually bound themselves to arbitrate *de novo*, and its factual findings for clear error." *Datatreasury Corp. v. Wells Fargo & Co.*, 522 F.3d 1368, 1371 (Fed Cir. 2008). "We are obligated to follow regional circuit law on questions of arbitrability that are not 'intimately involved in the substance of enforcement of a patent right.'" *Microchip Tech. Inc. v. U.S. Philips Corp.*, 367 F.3d 1350, 1356 (Fed. Cir. 2004) (quoting *Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1365 (Fed. Cir. 2001)). In this case, the issues of arbitrability are not intimately involved in the substance of enforcement of a patent right, and thus we apply the law of the Seventh Circuit. Arbitration agreements are governed by state contract law, *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002),[2] except to the extent that state law is displaced by

---

[2] The 1996 agreement is governed by Wisconsin law. J.A. 658 ("This Agreement shall be governed by Wisconsin law applicable to agreements made and to be performed in Wisconsin.").

"federal substantive law regarding arbitration" under the Federal Arbitration Act ("FAA"), *Preston v. Ferrer*, 552 U.S. 346, 349 (2008).

The FAA mandates enforcement of valid, written arbitration provisions. *See* 9 U.S.C. § 2 (2006); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001); *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004). "[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). This inquiry consists of two underlying issues: first, whether the parties entered into an agreement to arbitrate; and second, whether the dispute between the parties falls within the scope of the arbitration agreement. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2856 (2010) ("To satisfy itself that such agreement exists, the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce."); *see also Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006). In determining whether an agreement requires arbitration, courts must recognize that the FAA "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston*, 552 U.S. at 349.

Promega raises various arguments as to why it should not be compelled to arbitrate. First, Promega contends that the arbitration clause at issue here is permissive rather than mandatory. In support of its contention, Promega relies on language from section 15.3 of the 1996 agreement which provides that where there is a dispute over whether a material breach of the agreement has occurred, the parties "*may* invoke the arbitration provi-

sion of paragraph 22.0." J.A. 654 (emphasis added). However, the arbitration provision of section 22.1 and Appendix E to the 1996 agreement, which discusses arbitration procedures, both very clearly provide that all controversies or disputes arising out of the 1996 agreement "*shall*" be submitted for arbitration once the arbitration provision has been invoked. J.A. 658, 665 (emphasis added). While the agreement does not compel a party to demand arbitration, once a party does so, the plain language of the 1996 agreement shows that arbitration is mandatory, not permissive.

Second, Promega argues that IP Holdings is merely a shell subsidiary and that the real party-in-interest is Life Technologies. Because there was no agreement between Promega and Life Technologies to arbitrate, Promega maintains that the district court erred in compelling arbitration. However, Promega's argument misses the mark. There is no question that Promega consented to Invitrogen's assignment of the rights and obligations under the 1996 agreement to IP Holdings, and Promega does not contend otherwise. The 1996 agreement could not have been assigned from IP Holdings to Life Technologies because Promega never consented to such assignment. Although IP Holdings may have intended to transfer its rights under all agreements to Life Technologies and the parties may have acted at times as though such an assignment had occurred, the transfer of IP Holdings' interest in the 1996 agreement could not be effective absent the consent of Promega, which was never requested or obtained. As the district court noted, Promega cannot have it both ways; it cannot deny IP Holdings the right to arbitrate because it assigned its right to Life Technologies, and then consequently deny Life Technologies the right to arbitrate because Promega did not grant IP Holdings consent to assign its rights. *See*

*Arbitration Order*, slip op. at 8. Because there was no assignment, the rights under the 1996 agreement remain with IP Holdings. Because there is no dispute that IP Holdings remains a corporation in good standing under Delaware law, we conclude that there is a valid agreement between Promega and IP Holdings to arbitrate.

Third, Promega asserts that the arbitration provision does not encompass the dispute over Promega's alleged failure to pay royalties because the parties intended arbitration to apply only to small disputes between non-competitors. According to Promega, the dispute at issue here is not a small, informal dispute, and Life Technologies is now Promega's direct competitor. The arbitration provision here provides: "All controversies or disputes arising out of or relating to this Agreement, or relating to the breach thereof, shall be resolved by arbitration conducted in Chicago, Illinois, in accordance with the procedure set forth in Appendix E." J.A. 658. This provision is not limited to small disputes, or to disputes with those who do not compete with Promega. The arbitration provision here clearly and unambiguously applies to *all* disputes arising out of or relating to the 1996 agreement. The unexpressed "intent" of the parties cannot limit the scope of this broad arbitration clause. Imposing limits on such a clause would be inconsistent with the well-established presumption in favor of arbitration. *See AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Where, as here, "the arbitration provision is broad . . . only an "'express provision excluding a particular grievance from arbitration . . . [or] the most forceful evidence of a purpose to exclude the claim from arbitration'" can keep the claim from arbitration." *Exelon Generation Co. v. Local 15, Int'l Bhd. of Elec. Workers*, 540 F.3d 640, 646 (7th Cir. 2008) (alteration in original) (quoting *AT & T Techs.*, 475 U.S. at 650).

Fourth, Promega alleges that compelling arbitration would be unjust and unfair in this situation due to the fact that the agreed-upon arbitration procedures set forth in Appendix E do not permit third-party discovery; Promega argues that such discovery is essential to the dispute in this case because important discoverable information remains in the possession of Life Technologies. Appendix E to the 1996 agreement provides that during arbitration, "either party may engage in discovery upon any matter, not privileged, relevant to the dispute, claim or controversy," including "written interrogatories, requests for production of documents and tangible things, requests for admissions and oral depositions of the other party and its employees." J.A. 665. IP Holdings also represented during oral argument that Life Technologies would consent to discovery during the arbitration proceedings and would produce relevant documents.[3] In general,

---

[3]    During oral argument, in response to the Court's inquiry about Promega's ability to obtain discovery from third parties, counsel for IP Holdings, which also represents Life Technologies and AB in the district court proceedings, represented that Life Technologies would consent to discovery:

The Court: "So Life Technologies has consented to depositions and whatever else?"
Counsel:    "Yes, and the reason for that, frankly, is that IP Holdings, as the Court is aware, is a wholly-owned subsidiary of Life Technologies. It does not maintain its documents separately, so—"
The Court: "You are not relying on the difference in corporate form to resist discovery?"
Counsel:    "That is correct your Honor, that's correct."

Oral Arg. at 17:01, Dec. 6, 2011, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/all/promega.html.

"courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *AT&T Mobility LLC v. Conception*, 131 S. Ct. 1740, 1745 (2011). "[P]arties may agree to limit the issues subject to arbitration, to arbitrate according to specific rules, and to limit *with whom* a party will arbitrate its disputes." *Id.* at 1748-49 (internal citations omitted). Thus, Promega was free to accept or reject the provisions set forth in Appendix E when it entered into the agreement with Research Genetics, and cannot now claim that the terms that it agreed to are unfair. Promega has not called our attention to any case that holds that limitations on discovery warrant a departure from the FAA's mandate to enforce arbitration provisions; and we conclude that the limitations set forth in Appendix E do not warrant such a departure. *See* 1 Thomas H. Oehmke, *Commercial Arbitration* § 10:12 (3d ed. 2004) ("A lack of discovery is no basis to find that a statutory claim is inarbitrable so long as there is sufficient discovery available to those who enjoy statutory rights to vindicate their claims in arbitration.").

Fifth, Promega urges that arbitration is inappropriate because its claims of patent infringement against Life Technologies and AB remain pending in the district court. In this case, Promega's claims of infringement of four patents pending before the district court have no relationship to the arbitrable claims. The arbitrable claims under the 1996 agreement are related to the district court proceedings only in that Promega asserts infringement of a fifth patent—the '984 patent—which is one of the patents licensed to Promega under the 1996 agreement which Promega contends entitles it to sue for infringement. "The preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered, and that concern requires that we

rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Thus, the Supreme Court has instructed that "the relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983). The district court's duty to compel arbitration is not altered by the fact that non-arbitrable claims may remain pending in the district court. *See, e.g.*, *Klay v. All Defendants*, 389 F.3d 1191, 1204 (11th Cir. 2004) (recognizing the district court's authority to compel arbitration of arbitrable claims, while allowing related non-arbitrable claims to proceed before the district court).

Finally, Promega raises various equitable defenses to arbitration; namely, laches, waiver, unjust enrichment and estoppel. "The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24-25. It is well established that "issues of procedural arbitrability, i.e., whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002) (citation omitted).[4] Defenses

---

[4] *See also Flender Corp. v. Techna-Quip Co.*, 953 F.2d 273, 277 (7th Cir. 1992) ("Where the scope of the agreement is unlimited, issues addressed to the liability of the parties and to the cancellation of the underlying agreement, rather than the agreement to arbitrate, are to be determined by the arbitrator." (quoting *Maria Victoria*

to liability under the agreement must be raised before the arbitrator. There is no claim here that there is a ground for revocation of the agreement itself. *See Mitsubishi Motors*, 473 U.S. at 632-33.

There is also no basis for Promega's claim that an evidentiary hearing is required as there are no contested factual disputes.

Accordingly, the district court's order compelling arbitration between Promega and IP Holdings is affirmed.

**AFFIRMED**

COSTS

Costs to appellees.

---

*Naviera, S.A. v. Cementos Del Valle, S.A.*, 759 F.2d 1027, 1031 (2d Cir.1985))).

# United States Court of Appeals for the Federal Circuit

---

**PROMEGA CORPORATION,**
*Plaintiff-Appellant,*

**and**

**MAX-PLANCK-GESELLSCHAFT ZUR FORDERUNG DER WISSENSCHAFTEN E.V.,**
*Plaintiff,*

**v.**

**LIFE TECHNOLOGIES CORPORATION, INVITROGEN IP HOLDINGS, INC., AND APPLIED BIOSYSTEMS, LLC,**
*Defendants-Appellees.*

---

2011-1263

---

Appeal from the United States District Court for the Western District of Wisconsin in Case No. 10-CV-0281, Senior Judge Barbara B. Crabb.

---

NEWMAN, *Circuit Judge*, dissenting.

Although arbitration may be a salutary alternative to litigation, there is no agreement to arbitrate as between the parties in interest for this dispute. No consent was given to assignment of the contract to Life Technologies, although

consent is explicitly required by the terms of the prior contract.

In the absence of agreement to arbitrate, arbitration cannot be imposed. I respectfully dissent from the court's contrary ruling.