# United States Court of Appeals
# for the Federal Circuit

---

**VERINATA HEALTH, INC., THE BOARD OF
TRUSTEES OF THE LELAND STANFORD JUNIOR
UNIVERSITY,**
*Plaintiffs*

**ILLUMINA, INC.,**
*Plaintiff-Appellant*

**v.**

**ARIOSA DIAGNOSTICS, INC.,**
*Defendant-Appellee*

**LABORATORY CORPORATION OF AMERICA
HOLDINGS,**
*Defendant*

---

2015-1970

---

Appeal from the United States District Court for the
Northern District of California in Nos. 3:12-cv-05501-SI,
3:14-cv-01921-SI, Judge Susan Y. Illston.

---

Decided: July 26, 2016

---

EDWARD R. REINES, Weil, Gotshal & Manges LLP,
Redwood Shores, CA, argued for plaintiff-appellant. Also
represented by DEREK C. WALTER.

DAVID ISAAC GINDLER, Irell & Manella LLP, Los Angeles, CA, argued for defendant-appellee. Also represented by JOSHUA GORDON, ANDREI IANCU.

––––––––––––––––

Before REYNA, CLEVENGER, and WALLACH, *Circuit Judges.*

REYNA, *Circuit Judge.*

Illumina, Inc. ("Illumina") appeals a district court order denying Illumina's motion to compel arbitration. Illumina and Ariosa Diagnostics, Inc. ("Ariosa") entered into a supply agreement in which the parties agreed that certain disputes will be subject to compulsory arbitration. The arbitration clause came into dispute when Illumina sued Ariosa for patent infringement, and Ariosa counterclaimed for breach of contract on grounds that, under the terms of the supply agreement, Ariosa had a license to the patent-in-suit. Illumina invoked the arbitration clause of the supply agreement and moved to compel arbitration. The district court concluded that Ariosa's counterclaims are not subject to arbitration. We *affirm* the district court's order denying compulsory arbitration.

BACKGROUND

Illumina develops, manufactures, and markets integrated systems and tools for analysis of DNA. J.A. 115. Illumina owns U.S. Patent No. 7,955,794 (the "'794 patent"), which covers DNA assay optimization techniques. The '794 patent was filed in 2002 and issued in 2011.

In late 2009, Ariosa endeavored to develop a non-invasive prenatal diagnostic test for the detection of fetal aneuploidies, which can lead to conditions such as Down syndrome. J.A. 157. Between 2010 and 2011, Ariosa provided Illumina, as a prospective investor in Ariosa,

technical information about its product proposals under development.  J.A. 232.

In January 2012, seven months after the '794 patent issued, Ariosa entered into a three-year supply agreement with Illumina, under which Illumina agreed to exclusively supply specific consumables, hardware, and software to Ariosa.  J.A. 204–05.  The agreement provided Ariosa with a non-exclusive license to Illumina's "Core IP Rights in Goods," while excluding from the scope of the license Illumina's "Secondary IP Rights in Goods."  J.A. 205.  The agreement defines "Core IP Rights in Goods" as follows:

> Illumina Intellectual Property Rights that pertain to the Goods (and use thereof in accordance with their Documentation) other than Secondary Illumina IP Rights in Goods, which are expressly excluded from Core IP Rights in Goods.

J.A. 202.  The agreement defines "Secondary IP Rights in Goods" as follows:

> the secondary Illumina Intellectual Property Rights that pertain to the Goods (and use thereof) only with regard to particular field(s) or application(s), and are not common to the Goods in all applications and fields.

J.A. 204.  Under the agreement, Ariosa was required to "identify and ensure that it has all rights from third parties and, with respect to Secondary IP Rights in Goods, all rights from Illumina that are necessary for its intended use of Goods."  J.A. 205.

The supply agreement also provided an arbitration clause and an exclusion-from-arbitration clause:

> Subject to the terms and conditions of this Section 31(c), any dispute, claim or controversy arising out of or relating to the breach, termination, enforcement, interpretation or validity of this

> Agreement, shall be determined by arbitra-
> tion . . . . This Section 31(c) shall not apply to, and
> no arbitration shall resolve, disputes relating to
> issues of scope, infringement, validity and/or en-
> forceability of any Intellectual Property Rights.

J.A. 219.  Prior to executing the supply agreement, Illu-
mina never suggested to Ariosa that Ariosa needed to
license the '794 patent or any other intellectual property
to operate Ariosa's test.

In March 2012, Ariosa launched a DNA-sequencing
test called the Harmony Prenatal Test.  J.A. 232.  The
test consisted of materials supplied by Illumina.  *Id*.

In October 2012, Verinata Health, Inc. ("Verinata")
and Stanford University sued Ariosa for patent infringe-
ment, alleging that the Harmony Prenatal Test infringed
certain claims of two patents not at issue in this appeal.
In January 2013, Illumina acquired Verinata, making it a
wholly owned subsidiary of Illumina.

On January 10, 2014, Illumina sent a letter to Ariosa,
accusing Ariosa of breaching the supply agreement by
failing to license Secondary IP Rights in Goods, as defined
and required by the supply agreement.  J.A. 406.  Illumi-
na demanded that Ariosa license "Secondary IP Rights
that [then Verinata, now Illumina] has set out in the
pending patent litigation against Ariosa."  *Id*.  Illumina
did not mention the '794 patent, and Ariosa denied
breaching the agreement.  J.A. 145.

On April 25, 2014, Illumina sued Ariosa in the North-
ern District of California, alleging that the Harmony
Prenatal Test infringed certain of the claims of the '794
patent.  J.A. 116.  On June 11, 2014, Ariosa filed an
amended answer with counterclaims for (1) declaratory
judgment of invalidity and non-infringement; (2) breach of
contract; and (3) breach of the covenant of good faith and
fair dealing.  J.A. 125, 149–51.  Ariosa raised license and

estoppel as affirmative defenses. J.A. 134. Ariosa's counterclaims alleged that Illumina breached the supply agreement by "bringing a lawsuit against Ariosa for infringement of the '794 patent" and "by asserting pretextual claims of 'breach' of the [supply agreement]." J.A. 150–51; *see also* J.A. 245, 247 (same for second amended answer and counterclaims).

In June 2014, Illumina filed a motion to dismiss Ariosa's counterclaims in view of the arbitration clause in the supply agreement. On August 7, 2014, the district court denied the motion to dismiss, concluding that Ariosa's counterclaims for breach of contract and the covenant of good faith and fair dealing were not subject to compulsory arbitration.

On September 15, 2014, Illumina appealed to this Court. *See Illumina, Inc. v. Ariosa Diagnostics, Inc.*, No. 2014-1815 (Fed. Cir. filed Sept. 15, 2014). On June 23, 2015, we remanded the case to the district court so that Illumina could resubmit its motion as a motion to compel arbitration.

On July 20, 2015, Illumina refiled in the district court a motion to compel arbitration. J.A. 249. On August 31, 2015, the district court denied the motion on grounds that Ariosa's defense that it possessed an express or implied license was "directly related to whether a patent has been infringed." *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, No. 12-cv-05501-SI, 2015 U.S. Dist. LEXIS 115701, at *10–12 (N.D. Cal. Aug. 31, 2015).

Illumina appeals. We have jurisdiction under 9 U.S.C. § 16; 28 U.S.C. § 1292(a)(1), (c).

### STANDARD OF REVIEW

We review de novo a district court's conclusion as to whether the parties have bound themselves to arbitrate. We review any factual findings in support of that conclusion for clear error. *Promega Corp. v. Life Techs. Corp.*,

674 F.3d 1352, 1355 (Fed. Cir. 2012). We apply our law to substantive and procedural issues unique to and intimately involved in federal patent law, and we apply regional circuit law to other substantive and procedural issues. *Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1365 (Fed. Cir. 2001) (citing *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 8752, 855–56 (Fed. Cir. 1999)). We apply regional circuit law, which in this case is the Ninth Circuit, when determining whether "non-infringement and invalidity fall within the scope of the arbitration clause of the parties' agreement." *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1349 (Fed. Cir. 2002) (citations omitted). Arbitration agreements are governed by state contract law, except to the extent state law is displaced by "federal substantive law regarding arbitration." *Promega*, 674 F.3d at 1356 (quoting *Preston v. Ferrer*, 552 U.S. 346, 349 (2008)).

## DISCUSSION

The Federal Arbitration Act mandates enforcement of valid, written arbitration provisions. *See* 9 U.S.C. § 2; *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001). When a party moves to compel arbitration of a dispute, a court must determine whether the parties agreed to arbitrate that dispute. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). This inquiry requires a court to determine whether the dispute between the parties falls within the scope of the arbitration agreement. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010). Thus, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Id.* (emphasis in original). In determining whether an agreement requires arbitration, courts must recognize that the Federal Arbitration Act "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston*, 552 U.S. at 349. "The presumption in favor of

arbitrability applies only where the *scope* of the agreement is ambiguous as to the dispute at hand, and we adhere to the presumption and order arbitration only where the presumption is not rebutted." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014).

Illumina argues that the district court should have compelled arbitration under the supply agreement. Illumina asserts that the supply agreement's arbitration clause is ambiguous. Illumina contends that due to this ambiguity, it need only demonstrate that the agreement is susceptible to an interpretation in favor of arbitration and that that interpretation is reasonable. Illumina posits three arguments for why the supply agreement is susceptible to an interpretation compelling arbitration and why that reading is reasonable.

First, Illumina contends that Ariosa's contract counterclaims do not involve evaluating the scope of the patent or patent infringement because no claim construction or infringement analysis is needed to resolve Ariosa's contract counterclaims. Illumina maintains that the text of the supply agreement shows that the intent of the exclusion-from-arbitration clause is to insulate the arbitrator from resolving questions of patent infringement (or patent scope, invalidity, or enforceability), but not whether license is a defense.

Second, Illumina contends that the district court interpreted the term "relating to" too broadly because the interpretation fails to give effect to the federal policy in favor of arbitration. Illumina explains that under the district court's interpretation, general business issues like indemnification and supply disputes could "relate to" patent infringement and therefore evade arbitration. Observing that the supply agreement used the term "issues" and not "claims," Illumina also suggests that the parties wanted to exclude only certain issues from being arbitrated, not that they intended for anything generally

connected to patent infringement to be litigated in district court. Illumina emphasizes that the affirmative defense of license is not among the issues identified in the supply agreement.

Finally, Illumina asserts that, in the event Ariosa's counterclaims are determined to fall within the exclusion-from-arbitration clause, the contract counterclaims not involving Ariosa's license defense should be severed and sent to arbitration. Illumina points out that contract counterclaims are separate and distinct business harms from the license defense to patent infringement.

Ariosa responds that its counterclaims fall within the terms of the exclusion-from-arbitration clause. Ariosa maintains that the presumption in favor of arbitration only applies after a court determines that an ambiguity exists as to whether a particular dispute is subject to arbitration and the party favoring district court litigation fails to rebut that presumption. Ariosa notes that the district court has twice concluded that Ariosa's counterclaims "unambiguously relate to issues of patent infringement" and thus "are outside of the scope of the arbitration agreement." J.A. 6. Ariosa argues that Illumina's claim of patent infringement is tied to the question of whether Ariosa was granted, and continues to enjoy, an express or implied license to the '794 patent. Ariosa contends that if it has an express license to the '794 patent as falling within the agreed upon Core IP Rights in Goods, then Ariosa has a viable counterclaim for breach of the supply agreement because Ariosa cannot be liable for infringement of that patent. Ariosa also contends that the district court correctly interpreted the term "relating to" as having broad meaning. Ariosa observes that Illumina has failed to present extrinsic evidence to support its narrow interpretation of "relating to," relying instead on attorney argument. Ariosa contends that certain issues in Ariosa's counterclaims cannot be severed as separate claims, and that despite filing two motions in the

district court arguing that Ariosa's counterclaims are subject to arbitration, Illumina has never made this particular severance argument until this appeal.

We agree that Ariosa's counterclaims are not subject to arbitration. The pertinent language of the arbitration provision is unambiguous and makes clear that "disputes relating to issues of" patent scope and infringement are not subject to mandatory arbitration. J.A. 219. Illumina put the scope of licensed patent rights in issue by suing Ariosa for patent infringement. The counterclaims at issue—declaratory judgment of non-infringement, breach of contract, and breach of certain covenants—are predicated on the notion that the infringement allegations cannot stand because of the licensing provisions within the supply agreement. *Endo Pharm., Inc. v. Actavis, Inc.*, 746 F.3d 1371, 1374 (Fed. Cir. 2014) (noting that the burden of proving license as a defense rests with the alleged licensee). The scope of the licensed intellectual property rights is germane to whether Ariosa ultimately obtained a license to the '794 patent for goods that it has been exclusively purchasing from Illumina under the supply agreement. Ariosa's counterclaims are not about licensing or a license defense in the abstract—they are centered on whether Ariosa is licensed to use, and thus is immunized from infringement of, the asserted claims of the '794 patent. Given the scope of the supply agreement term "any Intellectual Property Rights," it would be an odd circumstance to countenance parallel district court litigation with license as an affirmative defense, while forcing arbitration over counterclaims arising from that very license. J.A. 219.

The arbitration clause applies to issues identified by the supply agreement that are not patent-related, such as failure of performance and defenses against the enforceability or validity of the supply agreement itself. Illumina's argument fails to appreciate that the excluded issues are about disputes over the scope of the licensed intellec-

tual property—not whether a party lacked capacity to contract or failed to ship product under agreed upon terms and conditions.

The Ninth Circuit and courts interpreting California law have held that the phrase "relating to" should be given broad meaning, in contrast to other prefatory phrases, such as "arising hereunder."[1] In view of California law and past interpretations of similar clauses, a disagreement about the scope of licensed rights does not render the clause ambiguous for purposes of invoking the presumption in favor of arbitration. To the extent Illumina suggests that the word "issues" narrows the import of the exclusion-from-arbitration clause, we disagree because the full phrase links "issues" with the modifier "relating to": "disputes relating to issues of." J.A. 219.

---

[1] *See, e.g., Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922 (9th Cir. 2011) ("Because of the absence of the 'relating to' language in the arbitration provision, we had 'no difficulty finding that "arising hereunder" is intended to cover a much narrower scope of disputes, i.e., only those relating to the interpretation and performance of the contract itself.'") (quoting *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983)); *Tracer Research Corp. v. Nat'l Envtl. Serv.*, 42 F.3d 1292, 1295 (9th Cir. 1994) (noting "[t]he omission of the 'relating to' language is 'significant'," and finding the arbitration clause at issue more narrow without that language); *Izzi v. Mesquite Country Club*, 231 Cal. Rptr. 315, 317 (Cal. Ct. App. 1986) ("where contracts provide arbitration for 'any controversy . . . arising out of or relating to the contract . . .' the courts have held such arbitration agreements sufficiently broad to include torts, as well as contractual, liabilities so long as the tort claims 'have their roots in the relationship between the parties which was created by the contract.'") (citations omitted).

Illumina has presented no extrinsic evidence to support its narrow interpretation, and instead relies on attorney argument. *See Yufa v. Lockheed Martin Corp.*, 575 F. App'x 881, 887 (Fed. Cir. 2014) (rejecting attorney argument as evidence); *Enzo Biochem, Inc. v. Gen-Probe, Inc.*, 424 F.3d 1276, 1284 (Fed. Cir. 2005) (same).

The district court was correct not to sever the contract counterclaims. We do not reach the issue of whether Illumina waives its argument that Ariosa's license defense is subject to the arbitration clause of the Agreement. Even so, Illumina fails to articulate how to separate as discrete the patent infringement issues involved in the contract counterclaims. The nucleus of Ariosa's counterclaims is the patent infringement lawsuit filed by Illumina. Illumina cannot hijack the counterclaims and make them its own for purposes of compelling arbitration. The counterclaims all rise or fall on the scope determination of licensed intellectual property rights, a matter that the parties expressly agreed to exempt from arbitration.

## CONCLUSION

The district court correctly concluded that the parties did not bind themselves to arbitrate Ariosa's counterclaims. The district court's order denying the motion to compel arbitration is therefore *affirmed*.

## AFFIRMED

### COSTS

Each party shall bear its own costs.